Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 3255 | DATE | August 3, 2004 |
| CASE TITLE | Henry Becton       v       Jo Anne B. Barnhart, commissioner | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOJune 14, 2004CKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Memorandum opinion and order entered. Defendant's motion for summary judgment is granted and the decision of the Commissioner denying both DIB and SSI benefits is **affirmed**.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | AUG 0 5 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 35 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | GDS | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 2004 AUG -4 AM 11:43 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HENRY BECTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 02 C 3255 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| JO ANNE B. BARNHART, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

DOCKETED
AUG 0 5 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Henry Becton filed this action against defendant Jo Anne Barnhart, Commissioner of the Social Security Administration, challenging the denial of his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416, 423, 1381a. Defendant has moved for summary judgment. For the reasons set forth below, defendant's motion for summary judgment is granted and the decision denying DIB and SSI benefits is affirmed.

## PROCEDURAL HISTORY

Plaintiff applied for DIB on March 27, 1997, and SSI on February 5, 1997, alleging that he had been disabled since March 15, 1996, due to diabetes and depression. After being denied initially, a hearing was held before Administrative Law Judge ("ALJ") Edward Gustafson, who issued an opinion on June 18, 1998, denying plaintiff's application. Plaintiff's requested review by the Appeals Council was granted, and on April 27, 1999, the Appeals Council vacated ALJ Gustafson's order and remanded the case for further findings. Before the Appeals Council, plaintiff alleged that ALJ Gustafson belittled and dismissed the devastating and crippling effects

of severe depression. Because the tape of the administrative hearing was inaudible, the Appeals Council was unable to determine the veracity of plaintiff's allegations against ALJ Gustafson. Therefore, the Appeals Council instructed plaintiff on remand to notify ALJ Gustafson if plaintiff still objected to ALJ Gustafson hearing the case. The ALJ was instructed to consider plaintiff's objections, and decide whether to proceed with the hearing or withdraw from the case.

On remand, plaintiff sent a letter, received in the hearing office, requesting that ALJ Gustafson withdraw and that another ALJ be appointed. The file does not indicate whether ALJ Gustafson saw the letter and denied plaintiff's objections, or never saw the letter at all. In any event, ALJ Gustafson held another hearing and issued another opinion denying plaintiff's request for benefits.

Again plaintiff sought review by the Appeals Council, and again that council granted review, vacated the decision and remanded the case for further proceedings. Specifically, the Appeals Council noted that its review of the second decision indicated that ALJ Gustafson did not fully comply with the initial remand order and that there was no indication in the record that plaintiff, who proceeded unrepresented, received any help getting updated medical reports, leaving the record incomplete. Nor did ALJ Gustafson's decision express plaintiff's residual functional capacity ("RFC") in specific terms, with appropriate references to the record. After detailing other deficiencies in ALJ Gustafson's second decision, the Appeals Council specifically found merit in plaintiff's allegations that the ALJ "belittled and dismissed how devastating and crippling severe depression can be," and showed a personal disregard and contempt for the facts and issues in the case. Therefore, the Appeals Council directed that the case be assigned to another ALJ.

On remand, the case was assigned to ALJ Helen Cropper. At the hearing, which was scheduled on short notice at plaintiff's request, ALJ Cropper explained in detail to plaintiff that he had a right to 20 days notice before the date of the hearing and that plaintiff had a right to be represented by an attorney, a paralegal or someone trained in disability law. Plaintiff stated that he understood those rights, but chose to go forward at that time.

## FACTS

Plaintiff was 48 years old at the time of the hearing. He graduated from high school, and has three years of college credit. His only past relevant work experience was as a patient sitter at the University of Illinois from 1990 to 1993.

In 1996, plaintiff enrolled in a screening test for diabetes mellitus at University of Illinois Chicago, where he was found to have elevated blood sugar. He was referred to Community Health Free Clinic ("Community"), where he received routine medical care starting in September 1996. He was prescribed medication for diabetes. On his next visit in December 1996 he reported feeling better. His medication was increased and he was referred to a diet class and advised to have an eye exam.

He returned to Community on January 9, 1997, complaining of blurred vision, but denied any other symptoms. His medication was maintained, and he was counseled about diet and exercise. He was referred for an ophthalmologic exam. He received a diet counseling session on January 13, 1997, and returned to on Community January 27, where he reported improvement, but was advised to check his blood sugar levels more frequently. He received an eye exam on February 20, 1997, which indicated that his eyes were "okay," and that he required only routine follow up.

3

Plaintiff next returned to Community on March 7, 1997, reporting to the doctors that he had applied for disability for "dizziness, DM," and seeking a physical exam. His blood pressure was elevated and he was prescribed Lotensin for the hypertension. His diabetes prescription was maintained. He returned one month later for refills, reporting that he felt depressed and that the Lotensin caused constipation. He was given samples of Vasotec, to replace the Lotensin and Zoloft for the depression.

Plaintiff's next visit to Community was in June, 1997 for refills, where he complained of fatigue, difficulty sleeping, and decreased libido. His doctor prescribed Paxil instead of Zoloft in an attempt to alleviate plaintiff's symptoms. He returned on July 10, 1997, for refills, and reported itching and occasional pain in his left ear. He continued to have sleeping problems, but reported improvement in his libido with the discontinuation of Zoloft. He told the doctors that he checked his blood sugar only when he did not feel well, and adjusted his own diabetes medication depending upon the results of the blood sugar test.

Plaintiff returned to Community in August 1997 for refills, where he was given samples of Vasotec and Paxil, and the doctor indicated that he would write a prescription for Fosinopril, and other anti-hypertension medicine. On September 13, plaintiff complained of shortness of breath on exertion, and admitted that he was not checking his blood sugar levels. Plaintiff's lab work indicated high cholesterol, but he had a normal EKG. The doctor continued plaintiff on Lotensin, reinforced the importance of diet control, and advised plaintiff to have further lab work.

Plaintiff returned to the clinic on November 6, 1997, seeking refills and complaining of weakness, dizziness and increased perspiration. He again complained of side-effects from the

4

Lotensin, and the doctor prescribed Norvasc, adding a prescription for cholesterol control, continued the diabetes medicine (Glitizide), and gave plaintiff more samples of Paxil. On November 20, plaintiff returned seeking refills. The doctor noted at that time that plaintiff "does not feel depressed." Plaintiff did have slight objective muscle weakness, which the doctor attributed to the cholesterol medication, which he discontinued. Plaintiff was prescribed two medications for diabetes, Glucophage and Glipizide, and advised to continue taking Paxil. Plaintiff also had a nutritionist visit on December 8, 1997.

Plaintiff returned to Community on December 11, 1997, again requesting refills. At that time the doctor noted that plaintiff "is not compliant" with his diabetes prescriptions, and that he was not taking Glucophage regularly. The doctor prescribed Cardiazam for hypertension, Prabachol for cholesterol, continued plaintiff's diabetes medications, and advised him again to lose weight, encouraging plaintiff to walk briskly three times a week for 20 minutes each time.

The following month, plaintiff's oral diabetes medications were adjusted slightly, and his blood pressure was described as being in "good control." The doctor felt that plaintiff could lower his cholesterol with diet modification instead of medication.

Plaintiff continued to return to Community for medication refills and routine check ups through May 2001. The records from those visits indicate generally that his doctors described him as "non-compliant with his prescribed treatment for diabetes," and that plaintiff often self medicated, resulting in increased blood sugar levels. He was often warned of the risk of future kidney failure and/or loss of vision if he continued to refuse to comply with his treatment programs.

Plaintiff also had consultative examinations in connection with his claims. In April 1997 he was examined by Dr. Gaziano, an internist, who reported that plaintiff complained of diabetes, hypertension, and a history of depression. Dr. Gaziano described plaintiff as appearing "anxious and depressed." Plaintiff's gait and ambulation were normal, but he could squat only halfway to the floor and had slightly reduced range of motion of the lumbar spine. Plaintiff's ability to use both hands was completely normal as was a neurological exam. Dr. Gaziano reported that plaintiff's vision was 20/25 bilaterally.

In April 1997, plaintiff had a psychiatric consultative exam with Dr. Susan Fredriksen. Dr. Fredriksen observed that plaintiff was annoyed at having to return to the clinic for the exam and tended to minimize his responses. Plaintiff attributed his depression primarily to his physical problems and to the recurring symptoms of his hyper and hypo-glycemic episodes. He reported that he had recently taken Zoloft, an antidepressant, for about a month and while receiving some initial relief, the symptoms recurred. After examination, Dr. Fredriksen concluded that plaintiff's ability to comprehend instructions was fair, his ability to maintain concentration and attention was moderately impaired, and his overall memory was intact, although he might have a mild impairment at times. Dr. Fredriksen further reported that plaintiff's ability to complete tasks in a timely and efficient manner was at least moderately impaired, and that his ability to get along with co-workers and supervisors was moderately impaired. Finally, Dr. Fredriksen concluded that plaintiff's ability to withstand the usual work pressure was moderately to markedly impaired. Dr. Fredriksen diagnosed major depression and ruled out any personality disorder not otherwise specified.

On July 30, 1997, plaintiff underwent a consultative physical examination with Dr. A.P. Knott, Jr. Plaintiff complained of morning tiredness, episodes of dizziness and depression. He had normal gait and ambulation and there was no sign of diabetic retinopathy or other end organ damage. Dr. Knott diagnosed diabetes mellitus, hypertension and depression.

That same day, plaintiff underwent a consultative psychiatric examination with Dr. Robert Beebe. Plaintiff informed Dr. Beebe that he had taken Zoloft for about six months, and then Paxil for two months. Plaintiff complained of depression, lack of energy and money, and about his poor memory and poor quality of sleep. Dr. Beebe described plaintiff as "mildly irritable" during the exam and noted the plaintiff's mood was depressed, but that the other formal mental status exam findings were relatively normal. Dr. Beebe diagnosed plaintiff with an unspecified adjustment disorder.

On May 12, 1997, state agency physician Charles Kenney reviewed plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment. Dr. Kenney concluded that plaintiff could perform the full range of medium work, but that he could only tolerate occasional climbing of ramps or stairs and ladders, rope, or scaffolds. Specifically, Dr. Kenney opined that plaintiff could lift, carry, push and pull up to 50 pounds occasionally and up to 25 pounds frequently, and that plaintiff could sit, stand and/or walk throughout an ordinary work day, with normal breaks, but should only occasionally climb.

Dr. John Tomassetti, a state agency psychologist, completed a Mental Residual Functional Capacity Assessment, in which he opined that plaintiff is moderately limited by his depression in his ability to sustain attention and concentration, in his ability to complete a work day and work week without interruptions from symptoms, in his ability to get along with co-

7

workers, and in his ability to adapt to changes in the work place. Dr. Tomassetti specifically noted that plaintiff retained sufficient residual mental capacity to perform unskilled tasks.

Dr. Benjamin Blackman testified as a medical expert at the hearing before Judge Cropper. Dr. Blackman testified that plaintiff's depression imposes moderate limitations on his ability to carry out detailed tasks and on his ability to sustain concentration for extend periods, but that plaintiff's mental RFC is not otherwise significantly impaired. He testified that the record showed quite clearly that plaintiff has the mental RFC to perform and sustain simple, unskilled work. Dr. Blackman also testified that although plaintiff had been diagnosed with depression and the medical records indicate treatment for depression, plaintiff did not exhibit any of the typical symptoms that are associated with the disease. Dr. Blackman stated that plaintiff could understand and perform complex tasks, but that he had some problems with persistence. Plaintiff could perform simple tasks on a regular basis.

Grace Gianforte testified as a vocational expert. ALJ Cropper asked Gianforte about job possibilities for a hypothetical individual with plaintiff's vocational profile, who had no exertional limitations, but should not climb and who should not be exposed to temperature extremes, humidity, vibrations, unprotected heights or hazardous equipment. In addition, the person was moderately limited in his ability to understand, remember and carry out detailed or complex tasks. Ms. Gianforte indicated that such an individual could perform jobs such as duplicating operator or library assistant, and that 2,500 jobs existed in the regional economy in each of those occupations. Both jobs were low stress.

The ALJ found that plaintiff met the non-disability requirements for a period of disability and DIB set forth in the Act and was insured for benefits through June 10, 1998. The ALJ

further found that plaintiff had not engaged in disqualifying substantial gainful activity since the alleged onset of disability, that plaintiff's diabetes, hypertension and depression are severe impairments, based on the Regulations (20 C.F.R. §§ 404.1521 and 416.921), but that plaintiff's medically determined impairments do not meet or medically equal one of the listed impairments in Appendix 1, subpart P., Reg. No. 4. Additionally, the ALJ found that plaintiff had the physical and mental RFC to perform a wide range of unskilled work, and that despite his exertional limitations there are a significant number of jobs in the national economy that he could perform. Therefore, the ALJ found that plaintiff was not under a "disability" as defined in the Social Security Act at any given time through the date of decision. Accordingly, the ALJ denied both DIB and SSI benefits. Plaintiff again sought review by the Appeals Council. This time review was denied. Plaintiff then filed the instant appeal.

## DISCUSSION

Plaintiff contends that the ALJ's finding that plaintiff was not disabled because he could perform a significant number of jobs in the national economy is not supported by the testimony and documentary evidence.

The Commissioner's factual findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold the SSA's findings, the standard of substantial evidence requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Diaz v. Chater, 55 F.3d 300, 305 (7th Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).

This standard of review recognizes that the ALJ is entrusted to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. Perales, 402 U.S. at 399-400. The reviewing court may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the agency to decide whether a claimant is or is not disabled. Diaz, 55 F.3d at 305; Cass v. Shalala, 8 F.3d 552, 555 (7th Cir. 1993). If a court determines that the ALJ's decision is not supported by substantial evidence and should be reversed, a remand for further proceedings, not an award of benefits, is appropriate unless all factual issues have been resolved and the court can conclude, with some certainty, that the plaintiff is totally disabled. See Campbell v. Shalala, 988 F.2d 741, 744 (7th Cir. 1993).

In his challenge to ALJ Cropper's decision, plaintiff argues that when evaluating plaintiff's residual functional capacity the ALJ relied too heavily on Dr. Blackman's testimony and gave too little weight to the records of his treating physicians. It is true, as defendant admits, that the opinion of a treating physician is generally entitled to greater weight than those of doctors who examine the claimant once, or simply review the medical records. 20 C.F.R. § 404.1527(d). In the instant case, however, nothing in plaintiff's treatment records indicate that he was mentally incapable of performing simple, unskilled work. The treating physician records indicate that both the depression and diabetes responded reasonably well to the medication, when plaintiff complied with instructions.

Plaintiff also complains that the ALJ selectively dismissed the effects of his diabetes and hypertension in considering whether those impairments separately or in combination meet the criteria of any section of the listings of impairments qualifying him for a presumption of disability. See 20 C.F.R. § 404.1520(d). None of the subjective complaints that plaintiff says the

This standard of review recognizes that the ALJ is entrusted to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. Perales, 402 U.S. at 399-400. The reviewing court may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the agency to decide whether a claimant is or is not disabled. Diaz, 55 F.3d at 305; Cass v. Shalala, 8 F.3d 552, 555 (7th Cir. 1993). If a court determines that the ALJ's decision is not supported by substantial evidence and should be reversed, a remand for further proceedings, not an award of benefits, is appropriate unless all factual issues have been resolved and the court can conclude, with some certainty, that the plaintiff is totally disabled. See Campbell v. Shalala, 988 F.2d 741, 744 (7th Cir. 1993).

In his challenge to ALJ Cropper's decision, plaintiff argues that when evaluating plaintiff's residual functional capacity the ALJ relied too heavily on Dr. Blackman's testimony and gave too little weight to the records of his treating physicians. It is true, as defendant admits, that the opinion of a treating physician is generally entitled to greater weight than those of doctors who examine the claimant once, or simply review the medical records. 20 C.F.R. § 404.1527(d). In the instant case, however, nothing in plaintiff's treatment records indicate that he was mentally incapable of performing simple, unskilled work. The treating physician records indicate that both the depression and diabetes responded reasonably well to the medication, when plaintiff complied with instructions.

Plaintiff also complains that the ALJ selectively dismissed the effects of his diabetes and hypertension in considering whether those impairments separately or in combination meet the criteria of any section of the listings of impairments qualifying him for a presumption of disability. See 20 C.F.R. § 404.1520(d). None of the subjective complaints that plaintiff says the

ALJ ignored, such as dizziness, fatigue, insomnia, shortness of breath, sweating, and muscle weakness, are relevant to a finding of per se disability under either the diabetes or cardiovascular listings. 20 C.F.R. part 404, subpart P, app. 1 § 4.02-4.04, 9.08.

Additionally, the ALJ concluded that she could not give full credit to plaintiff's testimony that he suffers constantly from marked functional limitations caused by his depression, because that testimony was inconsistent with the records of the treating physicians to whom he had often stated that his depression was responding to medication. The ALJ also noted that despite plaintiff's testimony as to the severity of his limitations, he nonetheless was able to adequately care for his own hygiene and apartment, and was able to travel across the city by public transportation to visit thrift shops and the Community Clinic. He also had no problem getting along with friends and family members.

Finally, plaintiff's major complaint is that ALJ Cropper was "unfair, dishonest and discriminatory, because she told plaintiff at the hearing that the reason for the second remand was due to an inaudible hearing tape when the actual reason was due to errors by ALJ Gustafson in adjudicating the claim. This court's review of the transcript of the hearing before ALJ Cropper reveals first, that plaintiff had no objection to going forward without a copy of the remand order, and second that ALJ Cropper told plaintiff that an inaudible tape was one of several reasons for the remand. She also told plaintiff that there were questions about the evidence in the record, that ALJ Gustafson did not try to get certain evidence in question, and that the Appeals Council was not satisfied with the way ALJ Gustafson explained his findings.

It is clear that ALJ Cropper was mistaken when she indicated that the second remand was based in part on an inaudible tape. It appears to the court that she was reading from the second

Appeals Council decision, which indicates that the first remand was based on an inaudible tape. Plaintiff argues that the ALJ Cropper's misrepresentation of the Appeals Council's decision and her "neglect to admit that the Appeals Council supported [his] charges of discrimination by the previous judge was a woeful and purposeful attempt to misdirect [his] defense and evidence to be submitted into the record." There is, however, nothing in the transcript or record to support these charges. The hearing went forward at plaintiff's insistence. He was given an opportunity for more time to review any evidence, but insisted on proceeding without delay. Judge Cropper's decision contains a thorough and detailed review of all the medical records and plaintiff's testimony. The record demonstrates that there is substantial evidence to support her denial of benefits. Accordingly, that denial is affirmed.

## CONCLUSION

For the reasons set forth above defendant's motion for summary judgment is granted and the decision of the Commissioner denying both DIB and SSI benefits is affirmed.

**ENTER:** **August 3, 2004**

_____
**Robert W. Gettleman**
**United States District Judge**